UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE NEFTALI ALEGRIA PALMA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.:  25-cv-1942-BJC-MMP<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE FOR PRELIMINARY INJUNCTION HEARING**<br><br>**[ECF No. 6]** |

On July 30, 2025, Petitioner filed a petition for a writ of habeas corpus, ECF No. 1, followed by a motion for temporary restraining order ("TRO"), ECF No. 6, seeking immediate release from Immigration Customs Enforcement ("ICE") custody.  On August 1, 2025, the Court granted a limited temporary restraining order.  ECF No. 7.  A hearing on the temporary restraining order was held on August 7, 2025.  TRO Hearing, August 7, 2025, ECF No. 13.  For the reasons articulated below and as set forth on the record (*See Id.*), Petitioner's TRO is granted.

## I.    BACKGROUND

In 2021, Petitioner entered the United States between ports of entry near El Paso, Texas.  ECF No. 9 at 2, 14.  Subsequently, he was placed in removal proceedings under 8 U.S.C. § 1229a and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the U.S. without having been admitted or paroled.  ECF No. 9 at 2; 14.  In February 2022, Petitioner was released from ICE custody on his own recognizance and enrolled in an Alternative to Detention ("ATD") program, which included periodic reporting requirements.  *Id.*  According to Respondent, immigration officials likely determined that Petitioner was not a flight risk or danger to the community in deciding to release him on his own recognizance. [1]  TRO Hearing August 8, 2025, Transcript at 26.  From his release until the initiation of this action in July 2025, Petitioner asserts that he violated his parole conditions only once – by missing a photo check-in in April 2025.  ECF No. 6 at 10.  In contrast, Respondent contends that Petitioner failed to comply with reporting requirements on seven occasions, although the precise details of those seven violations remain unclear.  ECF No. 9 at 10.

According to Respondent, Petitioner's ankle monitor failed to transmit location data on June 1, 2025.  ECF No. 9 at 3.  ICE considered this a violation despite not knowing whether it was caused by machine failure or Petitioner tampering with it.  TRO Hearing August 8, 2025, Transcript at 10.  As a result, on July 25, 2025, the Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest.  ECF No. 9 at 23.  The warrant stated that Petitioner was removable based on: (1) the pendency of ongoing removal proceedings, (2) biometric confirmation of his identity, and (3) statements voluntarily made to an immigration officer.  *Id.*  There was no mention of the GPS failing

---

[1] During the August 8th hearing, the Court asked Respondent whether ICE made a determination that Petitioner "was not a danger to the community or a flight risk."  *See* TRO Hearing August 8, 2025, Transcript at pp. 10–11.  Respondent stated that this "would be a consideration" and that it would be "a reasonable consideration," but that they did not know for certain if such consideration was made prior to releasing Petitioner.  *Id.*

25-cv-1942-BJC-MMP

to transmit in the warrant.  TRO Hearing August 8, 2025, Transcript at 7.

Petitioner alleges that on July 26, 2025, ICE officers informed him that his ankle monitor was malfunctioning and needed repair.  ECF No. 6 at 7.  They asked him to step outside of his home in Stockton, California so the officers could fix the device.  *Id.*  When Petitioner complied, he was "forcefully" apprehended by ICE.  *Id.* at 11.  The following day, he was transferred to the Otay Mesa Detention Center in this district, approximately eight hours from his home.  ECF No. 9 at 3.  Petitioner does not have any criminal convictions.  TRO Hearing August 8, 2025, Transcript at 23.

On July 30, 2025, Petitioner filed a petition for a writ of habeas corpus, ECF NO. 1, followed by an *ex parte* motion seeking a temporary restraining order and/or preliminary injunction. ECF Nos. 6.  On August 1, 2025, the Court granted a limited temporary restraining order for seven days to preserve the status quo while allowing Respondent time to respond.  ECF No. 7.  Respondent filed an opposition on August 5, 2025, ECF No. 11, and Petitioner filed a reply on August 6, 2025.  ECF No. 12.  A hearing on the motion was held on August 7, 2025.  ECF No. 13.

## II.    STATUTORY FRAMEWORK

Under 8 U.S.C. § 1226(b) and 8 C.F.R. § 242.2(c), the DHS has the authority to revoke a noncitizen's bond or parole "at any time," even after the individual has been released.  However, the Board of Immigration Appeals ("BIA") has limited this authority, holding that when an immigration judge has previously made a bond determination, DHS should not alter that decision without a change in circumstances.  *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) [2].  In practice, DHS re-arrests individuals only after a "material" change in circumstances.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197

---

[2] Here, immigration officials released Petitioner on his recognizance.  TRO Hearing August 8, 2025, Transcript at 5.  Because no immigration judge made a bond determination in this case, *Sugay* is cited here solely to illustrate the broader principle that DHS's revocation authority has been understood to require a change in circumstances.

25-cv-1942-BJC-MMP

(N.D. Cal. 2017*), aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The government argues that DHS may exercise its discretion to re-arrest Petitioner under this statutory authority and that, pursuant to 8 U.S.C. § 1226(e), the Court lacks jurisdiction to review such a decision.  However, the law is clear that "[a]lthough § 1226(e) restricts jurisdiction in federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).  Moreover, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner does not challenge his initial detention or release on his own recognizance; rather, he asserts an as-applied constitutional due process challenge to the government's authority to re-detain him without notice and a hearing.  *See* ECF No. 6.  Accordingly, this Court has jurisdiction to consider his claim.

### III.    ANALYSIS

The issuance of a TRO "should be restricted to serving [the] underlying purpose of preserving the status quo and preventing irreparable harm." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006).  "[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023) (citing *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)).  The Ninth Circuit has prescribed the following equitable criteria for determining whether to grant injunctive relief:

> (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

25-cv-1942-BJC-MMP

*Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 367 F.3d 1108, 1111 (9th Cir. 2004) (quoting *Miller ex. rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994)). "The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Owner Operator*, 367 F.3d at 1111. District courts possess discretion regarding the grant or denial of preliminary relief. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Here, Petitioner raises a substantial procedural due process question: whether an individual previously released on bond may be re-detained by ICE under 8 U.S.C. § 1226(a) without first receiving a pre-deprivation administrative hearing before an immigration judge.[3] Notably, Petitioner does not challenge the substantive basis for detention under § 1226(a). Instead, he seeks narrowly tailored relief – namely, an order requiring procedural safeguards prior to re-arrest, in light of the government's prior determination that he posed no risk of flight or danger to the community, and absent any evidence of a material change in those circumstances.

Petitioner's claim is substantially supported by the reasoning in *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). In *Ortega*, the district court granted habeas relief to an individual similarly situated to Petitioner, concluding that the Due Process Clause required a pre-deprivation hearing prior to re-arrest. *Id.* The *Ortega* court reasoned that the petitioner had a significant liberty interest in remaining on bond, that the risk of

---

[3] At the hearing, the Government declared that Petitioner was detained under 8 U.S. Code § 1226(a), which states "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and the Attorney General has the discretion to detain or release the alien. TRO Hearing August 8, 2025, Transcript at 21.

erroneous deprivation in the absence of a hearing was high, and that the administrative burden on the government to provide such a hearing was minimal. *Id.* at 969-70.

The Court finds those considerations equally persuasive here. First, Petitioner has demonstrated a strong likelihood of success on the merits of his procedural due process claim. The core issue implicates a significant liberty interest: continued freedom after release on own recognizance. Given that Petitioner was previously released following a determination that he posed no flight risk or danger to the community, and absent any new evidence showing a material change in circumstances, the risk of erroneous detention without a hearing is substantial. The government's administrative burden to provide a prompt pre-deprivation hearing is minimal and does not justify circumventing constitutional protections. Thus, Petitioner has met his burden of demonstrating a likelihood of success on the merits.

Second, Petitioner has also shown a clear likelihood of irreparable harm if preliminary relief is not granted. The deprivation of liberty without constitutionally required procedural protections constitutes irreparable injury as a matter of law. See *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (internal citations omitted) ("[W]hen an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary."). Here, Petitioner was re-arrested and detained without prior notice or a hearing, which could result in a significant and ongoing deprivation of liberty. This harm is exacerbated by the lack of procedural safeguards that would have allowed Petitioner to contest the re-detention before suffering its consequences. Accordingly, the risk of irreparable harm strongly supports the issuance of preliminary injunctive relief.

Third, the balance of equities also tips sharply in Petitioner's favor. The government's interest in detaining noncitizens under § 1226(a) is not absolute and must be exercised in a manner consistent with due process. Where the government has previously found that Petitioner posed no danger or flight risk, and where Petitioner has demonstrated compliance with conditions of release since that time, the government's interest in avoiding

25-cv-1942-BJC-MMP

a brief delay to conduct a hearing is minimal. The requested relief does not prohibit detention outright, but merely imposes a modest procedural requirement to ensure the integrity of the re-detention decision.

Finally, the public interest favors the issuance of a temporary restraining order. The public has a compelling interest in the fair and constitutional enforcement of immigration laws. That interest is undermined when individuals are subject to abrupt deprivations of liberty without adequate process. Maintaining the status quo – by ensuring that Petitioner is not re-detained without a pre-deprivation administrative hearing – serves not only the individual interest at stake but also reinforces the broader public interest in transparency, procedural regularity, and governmental accountability. Additionally, Petitioner's continued presence in his community, where he works and supports dependents, contributes positively to the local economy and public welfare.

Accordingly, the Court concludes that Petitioner has demonstrated a strong likelihood of success on the merits of his procedural due process claim, a likelihood of irreparable harm, a sharp tipping of the balance of hardships in his favor, and that the public interest supports injunctive relief. Petitioner has therefore satisfied the requirements for a temporary restraining order under both the *Winter* framework and the Ninth Circuit's sliding scale approach.

///

///

///

///

///

///

///

///

///

///

25-cv-1942-BJC-MMP

## IV.    **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Petitioner's temporary restraining order is **GRANTED**;

2.  U.S. Immigration and Customs Enforcement is hereby **ORDERED** to immediately release the Petitioner from the Otay Mesa Detention Center;

3.  Respondent is **ORDERED** to provide Petitioner with copies of all immigration and detention records pertaining to him **by August 21, 2025**.

4.  Petitioner **SHALL FILE** a Motion to Convert the TRO to an Injunction **by August 13, 2025, at 5:00 p.m.**

5.  Respondents shall file an Opposition to Petitioner's Motion to Convert the TRO to an Injunction no later than **August 15 2025, at 5:00 p.m.**

6.  Should Petitioner wish to file a reply, he **SHALL REPLY** no later than **August 19, 2025, at 5:00 p.m.**

7.  A hearing on the Motion is **SET** for **August 21, 2025, at 10:00 a.m.**

    **IT IS SO ORDERED**.

Dated:  August 11, 2025

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

25-cv-1942-BJC-MMP